UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN JAIMES,<br><br>           Plaintiff,<br><br>    v.<br><br>DR. ROBERT J. BARNES, et al.,<br><br>           Defendants. | Case No.: 1:14-cv-00952-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST THE ADMINISTRATIVE REMEDIES<br><br>[ECF Nos. 35, 36] |

Plaintiff Juan Jaimes is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff declined magistrate judge jurisdiction and this matter was therefore referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(1)(B) and Local Rule 302. (ECF No. 7.)

Currently before the Court are Defendants' motions for summary judgment for Plaintiff's failure to exhaust the administrative remedies, filed October 5, 2015, and October 22, 2015. (ECF Nos. 35, 36.)

///
///
///
///
///

1

# I.

# RELEVANT HISTORY

This action is proceeding against Defendants Barnes, Neighbors, Finegan[1] and Kauffman for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

On September 15, 2015, Defendants Finegan, Kauffman and Neighbors filed an answer to the first amended complaint. (ECF No. 29.) On September 21, 2015, Defendant Barnes filed an answer to the first amended complaint. (ECF No. 32.)

On October 5, 2015, Defendants Finegan, Kauffman and Neighbors filed a motion for summary judgment for failure to exhaust the administrative remedies. (ECF No. 35.)

On October 22, 2015, Defendant Barnes filed a motion for summary judgment for failure to exhaust the administrative remedies. (ECF No. 36.)

After receiving several extensions of time, Plaintiff filed an opposition to Defendants' motions on April 18, 2016. (ECF No. 48.) [2]

On May 3, 2016, the Court granted Defendants' request to file a reply to Plaintiff's opposition nunc pro tunc to April 21, 2016. (ECF Nos. 50, 52.) On May 5, 2016, The Court also granted Defendant Barnes' request to file a reply nunc pro tunc to April 21, 2016. (ECF Nos.54, 55, 57.)

# II.

# DISCUSSION

### A.  Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position,

---

[1] Plaintiff incorrectly spelled Defendant Finegan's name as "Finnigan." the Court has replaced all references with the correct spelling.

[2] Plaintiff was provided with contemporaneous notice of the requirements for opposing a summary judgment motion for failure to exhaust administrative remedies. Stratton v. Buck, 697 F.3d 1004, 1008 (9th Cir. 2012); Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998). (Doc. 45.)

whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

As set forth above, the defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

### B. Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d, 1162, 1166

(9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing Albino, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to Plaintiff to show that something in his particular case made the existing and generally available administrative remedies effectively unavailable to him. Williams, 775 F.3d at 1191 (citing Albino, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendants. Id. (quotation marks omitted).

### C.     Summary of CDCR's Generally Available Inmate Appeals Process

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative remedy process for inmate grievances. Cal. Code Regs., tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). The administrative remedy process is initiated by submitting a CDCR Form 602 "Inmate/Parolee Appeal" within thirty calendar days (1) of the event or decision being appealed, (2) upon first having knowledge of the action or decision being appealed, or (3) upon receiving an unsatisfactory departmental response to an appeal filed. Tit. 15, §§ 3084.2(a), 3084.8(b)(1) (quotation marks omitted). The appeal must "describe the specific issue under appeal and the relief requested," and the inmate "shall list all staff member(s) involved and shall describe their involvement in the issue." Tit. 15, § 3084.2(a). Furthermore, the inmate "shall state all facts known and available to him regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment." Tit. 15, § 3084.2(a)(4).

///

### D. Allegations of First Amended Complaint

On April 6, 2012, while at KVSP Facility B-yard, between 2:00 and 2:30 p.m., Plaintiff was playing basketball and jumping for the ball, he landed and was pinned between several other inmates. Approximately a minute later, Plaintiff felt his back crack/pop/snap causing sharp throbbing and excruciating pain. Plaintiff was not able to move or stand from the waist up. Although Plaintiff summoned medical assistance, he did not receive any assistance. Plaintiff heard Defendant Neighbors and another unidentified correctional officer say, "you need to get your ass up and walk to the clinic if you want to get checked out, because I am not going to be carrying your ass, you decide." Plaintiff explained to Defendant Neighbors that he could not get up because his back snapped. Defendant Neighbors stated that he did not care because it was not his problem. Plaintiff observed two unknown inmates who witnessed the incident, and the two inmates carried and moved Plaintiff from where he was laying on his back to the clinic. While at the yard clinic, an unknown licensed vocational nurse (LVN) took Plaintiff's vitals and Plaintiff explained what happened. The LVN told Plaintiff that she was going to prepare the paperwork so that Plaintiff could be seen by a doctor at the Correctional Treatment Center (CTC) located within the facility. Shortly thereafter, Defendant Neighbors and an unknown officer went to Plaintiff's location and informed Plaintiff that he would have to be placed in shackles in order to transport him to CTC. Plaintiff stated that he could not get up or move at all. Defendant Neighbors again stated that Plaintiff would not be going anywhere until he was shackled, and Plaintiff was forced into shackles by Defendant Neighbors and an unknown officer.

Plaintiff arrived at CTC by ambulance between 3:30 and 4:00 p.m. Upon arrival, Plaintiff was placed in an observation room and approximately twenty minutes later his vital signs were taken. Plaintiff informed the nurse that he could not move any part of his upper body and was experiencing excruciating pain.

Between approximately 7:30 and 8:00 p.m., Defendant J. Barnes examined Plaintiff. Plaintiff explained that he injured his back and could not move due to the excruciating pain. Defendant Barnes told Plaintiff he looked fine. Shortly thereafter Plaintiff was taken to the x-ray room, and during the transport Defendant Barnes stated, "you guy[s] complain about everything, even when there [is] nothing wrong, you guys get better treatment then the people out here." After the x-rays, Plaintiff was

taken back to the observation room where he stood for hours at a table. Defendant Barnes returned to the room and told Plaintiff he was fine that it was just muscle back spasms. Plaintiff was discharged back to custody officers, Defendants Finegan and Neighbors without further treatment.

Plaintiff requested that Defendants Finegan and Neighbors get supervisor approval to cuff Plaintiff in front due to the pain in his back but his request was not accommodated. Plaintiff was escorted and placed in his cell where he laid on his back for five days, and he was forced to get from his bed and walk the stairs to shower and receive food. During the shower, there was no chair or bench to assist Plaintiff. Plaintiff had to endure this treatment from April 6, 2012, through April 17, 2012. Plaintiff informed Defendant Kauffman of the pain he experienced by having to stand and walk to receive food and shower. Defendant Kauffman and two other officers taunted Plaintiff by stating, "how does it fe[e]l to be useless and worthless, you can't even wipe your ass." Defendant Kauffman made no effort or attempt to call medical staff to assist Plaintiff.

### E. Statement of Undisputed Facts[3]

1. Before August 1, 2008, the Appeals Office received and reviewed all inmate appeals; since then, the Health Care Appeals Office receives and reviews appeals concerning health-care issues, including all appeals alleging misconduct by correctional officers or their superiors. (Tallerico Decl. ¶ 3, ECF No. 35-8; Pacillas Decl. ¶ 3, ECF No. 35-4.)

2. When an inmate submits an appeal that does not comply with regulations governing the appeal process, the Appeals Coordinator will reject (or "screen out") and return the appeal with the reason for the screening, and instructions on how to correct the defect, if correction is possible. (Tallerico Decl. ¶ 5; Pacillas Decl. ¶ 5.)

3. From 2012 to the present, when the Appeals Office at Kern Valley State Prison receives an inmate appeal, the policy and practice is for an Appeals Coordinator to assign a log

---

[3] Plaintiff did not admit or deny the facts set forth by Defendants as undisputed. Local Rule 260(b). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint and opposition. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

number, make an initial provisional determination of the issue raised by the appeal. If the appeal concerns a complaint against staff, the appeal is forwarded to the Chief Deputy Warden (referred to on screening notices as the "Hiring Authority") for a review of the appeal and a final determination of the issue. (Tallerico Decl. ¶ 6.)

4. Based on the Chief Deputy Warden's review of the appeal, he or she determines whether the appeal should be processed as a "Staff Complaint," in which case, an inquiry will be made into the alleged staff misconduct; and, if not, the appeal will be processed routinely as a non-staff complaint. (Tallerico Decl. ¶ 7.)

5. When the Appeals Office receives an appeal that raises health-care issues, it will screen out the appeal and forward it to the KVSP's Health Care Appeals Office for its review and processing. (Tallerico Decl. ¶ 8.)

6. Under KVSP's operations policy 5100.3, part 1, each housing unit has a locked box that is used exclusively for inmates to securely deposit their appeals. (Tallerico Decl. ¶ 9; Ex. 5.)

7. Operations policy 54100.3 was substantially the same in 2012 as it is today. (Tallerico Decl. ¶ 9; Ex. 6.)

8. Under operations policy 54100.3, part 1, every night the unit Sergeant transfers the appeals from the box in the housing unit to another collection box located in Central Control or Complex Control. Under part 3 of this policy, each day, the Appeals Office staff collects the appeals from the Central Control box, takes them to the Appeals Office, and stamps and logs them. (Tallerico Decl. ¶ 10; Exs. 5-6.)

9. No one other than authorized staff with keys to the unit and Central Control boxes have access to inmate appeals. (Tallerico Decl. ¶ 11.)

10. Operations policy 54100.2, part 2, sets forth a procedure permitting an inmate to obtain a receipt for submitting an appeal. (Tallerico Decl. ¶ 12; Exs. 5-6.)

11. Appeal 12-03481 did not concern any claims the Plaintiff is asserting in this action. (Tallerico Decl. ¶ 16, Ex. 3.)

///

///

12. When an inmate submits an appeal to the appeals office at a CDCR institution, and that appeal arose from an incident at another CDCR institution, the appeals office will screen out the appeal and forward it to the institution where the alleged incident occurred. (Pacillas Decl. ¶ 5.)

13. The incidents giving rise to Plaintiff's appeals 13-06647 and 14-01226 arose at CSP-Corcoran. (Voong Decl. ¶¶ 5-6 & Exs. 12-13.)

14. Since August 1, 2008, California Correctional Health Care Services (CCHCS) processes appeals concerning health-care-related issues. (Robinson Decl. ¶ 1; Voong Decl. ¶ 3.)

**F. Motions for Summary Judgment**

1. Defendants' Motions

Defendants move for summary judgment because Plaintiff failed to complete the administrative process for the claims against them, and Plaintiff does not have a valid excuse for failing to do so.

2. Plaintiff's Opposition

Plaintiff has filed a 267-page opposition in which he argues that he exhausted the administrative remedies to the extent possible. Plaintiff submits that he never received a response to appeal KVSP-0-12-01844 after it was forwarded to medical on June 15, 2012. Plaintiff also contends that he filed several other appeals which demonstrate exhaustion of the administrative remedies.

3. Defendants' Reply

In their reply, Defendants argue that Plaintiff's opposition devotes much of the discussion to several appeals that have nothing to do with his claims against Defendants.

4. Findings on Motions

Defendants bear the burden of demonstrating the existence of an available administrative remedy and Plaintiff's failure to exhaust that available remedy. Albino, 747 F.3d at 1172. Here, there is no dispute that CDCR has an administrative remedy process for inmate grievances which is initiated by submitting a CDCR Form 602 "Inmate/Parolee Appeal" within thirty calendar days (1) of the event or decision being appealed, (2) upon first having knowledge of the action or decision being appealed, or (3) upon receiving an unsatisfactory departmental response to an appeal filed. Cal. Code Regs., tit. 15, §§ 3084.2(a), 3084.8(b)(1) (quotation marks omitted); Williams v. Paramo, 775 F.3d 1182, 1191

(9th Cir. 2015); Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014). The appeal must "describe the specific issue under appeal and the relief requested," and the inmate "shall list all staff member(s) involved and shall describe their involvement in the issue." § 3084.2(a). Furthermore, the inmate "shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment." § 3084.2(a)(4). In this case, there is also no dispute that Plaintiff was aware of the inmate appeals process.

Defendants submit the declaration of M. Voong, Chief of the Office of Appeals (OOA)—the office that renders decisions on non-health-care appeals at the third level, between April 6, 2012, Plaintiff submitted only three appeals that OOA accepted for review after April 6, 2012, and decided by June 19, 2014: appeals KVSP 12-03481, COR 13-06647, and COR 14-01226. (Voong Decl. ¶ 4.) Appeal 12-03481 did not concern any claims that Plaintiff is asserting in this action, and instead it grieves facts relating to force that officers other than Defendants applied on September 11, 2012. (Tallerico Decl. ¶ 16, Ex. 3.) In addition, the incidents giving rise to Plaintiff's appeals 13-06647 and 14-01226 arose at California State Prison-Corcoran (CSP-Corcoran), and thus do not concern the incidents at KVSP from which Plaintiff's claims against Defendants arose.

Defendants further submit that the non-health-care appeals that Plaintiff submitted (but did not pursue to the third level of review) regarding the events that took place after he allegedly injured his back playing basketball do not provide sufficient factual information to alert KVSP officials of the nature of the wrong for which relief is sought. On April 30, 2012, when Plaintiff was at the hospital at CSP-Corcoran, he submitted appeal CSPC-9-12-02693, regarding his "claim of back injury and a possible staff complaint at KVSP," which was screened out and forwarded to KVSP. (Pacillas Decl. ¶ 8, Ex. 4.) Once KVSP received the appeal and assigned it a new log number—KVSP-0-12-01844—it screened out the appeal and forwarded "to medical for processing," because it did not meet the requirements of a staff complaint and concerns health-care issues. (Tallerico Decl. ¶ 14, Ex. 1.) Defendants contend that Plaintiff did not resubmit this appeal. (Id.)

///

///

(9th Cir. 2015); Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014). The appeal must "describe the specific issue under appeal and the relief requested," and the inmate "shall list all staff member(s) involved and shall describe their involvement in the issue." § 3084.2(a). Furthermore, the inmate "shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment." § 3084.2(a)(4). In this case, there is also no dispute that Plaintiff was aware of the inmate appeals process.

Defendants submit the declaration of M. Voong, Chief of the Office of Appeals (OOA)—the office that renders decisions on non-health-care appeals at the third level, between April 6, 2012, Plaintiff submitted only three appeals that OOA accepted for review after April 6, 2012, and decided by June 19, 2014: appeals KVSP 12-03481, COR 13-06647, and COR 14-01226. (Voong Decl. ¶ 4.) Appeal 12-03481 did not concern any claims that Plaintiff is asserting in this action, and instead it grieves facts relating to force that officers other than Defendants applied on September 11, 2012. (Tallerico Decl. ¶ 16, Ex. 3.) In addition, the incidents giving rise to Plaintiff's appeals 13-06647 and 14-01226 arose at California State Prison-Corcoran (CSP-Corcoran), and thus do not concern the incidents at KVSP from which Plaintiff's claims against Defendants arose.

Defendants further submit that the non-health-care appeals that Plaintiff submitted (but did not pursue to the third level of review) regarding the events that took place after he allegedly injured his back playing basketball do not provide sufficient factual information to alert KVSP officials of the nature of the wrong for which relief is sought. On April 30, 2012, when Plaintiff was at the hospital at CSP-Corcoran, he submitted appeal CSPC-9-12-02693, regarding his "claim of back injury and a possible staff complaint at KVSP," which was screened out and forwarded to KVSP. (Pacillas Decl. ¶ 8, Ex. 4.) Once KVSP received the appeal and assigned it a new log number—KVSP-0-12-01844—it screened out the appeal and forwarded "to medical for processing," because it did not meet the requirements of a staff complaint and concerns health-care issues. (Tallerico Decl. ¶ 14, Ex. 1.) Defendants contend that Plaintiff did not resubmit this appeal. (Id.)

///

///

1. <u>Appeal Log No. KVSP-O-12-01844</u>

Appeals Coordinator, Tallerico submits that Appeal Log No. KVSP-0-12-01844 was screened out at the first level of review on June 15, 2012. (Tallerico Decl. ¶ 13.) However, the June 15, 2012, screen out notice states the following:

> Be advised that this appeal issue should be submitted to the appropriate CDCR unit for review. Your appeal has been forwarded to health care staff for review and processing.
>
> This appeal was assigned to the Appeals Coordinator in error and will be forwarded to Medical for processing.

(<u>Id.</u>, Ex. 1.)

Defendants argue that notwithstanding any improper screening of Appeal Log No. KVSP-O-12-1844, the appeal was not sufficient to give fair notice of the claims asserting against Defendants in this action. Thus, the issue to be determined is whether Appeal Log No. KVSP-O-12-01844 grieved the factual allegations present in the instant action. Relevant here, the applicable prison regulations provide that inmates must list all involved staff members and describe their involvement; and inmates shall state all facts known regarding the issue being appealed. Cal. Code Regs. tit. 15, § 3084.2(a)(3), (4).

Appeal Log No. KVSP-O-12-01844, is hand-written in small print and is at times illegible. Defendants provided a transcription of the appeal which transcribes Plaintiff's grievance to the best ability, and states the following:

> Explain issue: On Friday, April 6, 2012, on or about 2:30 to 2:45 p.m., while at KVSP, I was injured playing sports. I was unable to move at all due to my back injury. And although I explained to medical staff and correctional officers present that day that my back felt as if it had broke[n] in half, I was forced to walk myself to the clinic or else quote "I was not going to get any medical attention." So with the help of two inmates I was carried to B-Facility clinic. Upon entering the clinic, I was left laid out on my back inside the holding cell [illegible]. Shortly thereafter [a] nurse came, asked what happen[ed], took my vitals and left. I was then asked to cuff up cause I was going to the hospital and [illegible] the ambulance was on its way. Officer Neighbors took it upon himself along with his co-worker that day to move me around without a proper valid medical license. After I reminded him that I felt this excruciating pain on my back due to injury, he stated I was not going anywhere until I get up and cuff up. On or about 3:00 to 3:45 p.m. the ambulance came and I was taken to CTC/TTA [illegible] where the paperwork was completed to be transferred to Delano Regional Medical Center. Shortly thereafter I was taken to Delano RMC where I stayed in a room for hours until I was finally given x-rays of my back.

> Shortly after x-rays were performed, [the] doctor came back and told me nothing is wrong [illegible] back spasms, and [I] was discharged back to KVSP B-facility. So on or around 9:30 p.m. [illegible] Sergeant Finegan placed me in a state vehicle and brought me [illegible]. On 4/11/12 I was seen by KVSP-B-Facility M. [name illegible]. I explained to him the pain I was felling and [illegible] and what the doctors on 4/6/12 had diagnosed me with. He orders x-rays and so on 4/13/12 I was ducated and went to CTC/TTA for x-rays for the second time. On April 17, 2012, I once again got called to CTC/TTA and was informed by doctor that [illegible] been a huge error. I have a fractured vertebrae L-1 with a squished disc. And so on 4/17/12 I was admitted to SJCH [San Joaquin Community Hospital].

(Carrasco Decl., Ex. 1.)

Defendants argue that in relation to the claims against them in this action, Plaintiff's grievance alleges that on April 6, 2012, after a nurse took his vital signs at the Facility B clinic, officer Neighbors asked Plaintiff to cuff up. (Carrasco Decl., Ex. 1.) Plaintiff told Neighbors that he was in excruciating pain, but Neighbors insisted Plaintiff was not going anywhere until he cuffed up. (Id.) At approximately 9:30 p.m., when Plaintiff was discharged from Delano Regional Medical Center, Sgt. Finegan placed Plaintiff in a state vehicle and brought Plaintiff back to KVSP. (Id.) Plaintiff alleges no other conduct by Neighbors or Finegan, and does not mention Kaufman or Dr. Barnes—the other two Defendants in this action. Nor does Plaintiff allege any misconduct Defendants in any other appeal, except appeal KVSP-0-12-02656—an appeal that was screened out for being duplicative of appeal 12-01844, alleged no more against Neighbors than Plaintiff alleged in appeal 12-01844, and included no hint of any claim against Finegan or any other Defendant. (Tallerico Decl. ¶ 15, Ex. 2.)

In recognition of the fact that exhaustion requirements are designed to deal with parties who do not want to exhaust, "proper exhaustion" of the administrative remedies is required and "proper exhaustion" demands compliance with an agency's deadlines and other critical procedural rules. Woodford v. Ngo, 548 U.S. at 90-91. As previously set forth, at the time the appeal was submitted, the regulations required a description of the specific issue under appeal and the identification of all involved staff members, specifically:

> (3) The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If

11

>the inmate of parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.
>
>(4) The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Form Attachment.

§ 3084.2(a)(3), (4).

This action is proceeding on the following claims: (1) deliberate indifference to a serious medical need against Dr. Barnes; (2) deliberate indifference against Defendant Neighbors for ordering Plaintiff to get up and walk to clinic after Plaintiff alleged seriously injured his back; (3) deliberate indifference against Defendants Neighbors and Finegan for forcing Plaintiff to walk from his cell using the stairs to shower and receive food for eleven days (from April 6, 2012 to April 17, 2012) resulting in excruciating pain; and (4) deliberate indifference against Defendant Kauffman who was informed of the pain Plaintiff was experiencing from having to walk the stairs to shower and receive food, and thereafter failed to provide assistance taunted Plaintiff by stating, "how does it feel to be useless and worthless, you can't even wipe your ass." (ECF No. 22.)

For the reasons that follow, the Court finds that Appeal Log No. KVSP-O-12-01844, was sufficient to place prison officials on notice that that Defendant Neighbors was deliberately indifferent to his health and safety by ordering Plaintiff to get up and walk to the medical clinic after Plaintiff alleged seriously injured his back, and that Dr. Barnes was deliberately indifferent to his serious medical needs during the medical visit at Delano Regional Medical Center on April 6, 2012. However, the Court finds that Appeal Log No. KVSP-O-12-01844 was not sufficient to place prison officials on notice that: (1) Defendants Neighbors and Finegan were deliberately indifferent to Plaintiff's medical needs for forcing Plaintiff to walk from his cell using the stairs to shower and receive food from April 6, 2012 to April 17, 2012; and (2) deliberate indifference by Defendant Kauffman who failed to provide assistance and taunted Plaintiff as he was in excruciating pain.

Although Plaintiff's appeal mentioned Defendant Finegan, it only stated that he placed Plaintiff in a state vehicle and returned him back to the prison. There is no mention of any improper conduct on the part of Defendant Finegan, and the fact that he placed Plaintiff in a state vehicle and

12

returned him back to the prison is not part of the factual claim upon which his constitutional violation is based and there is no inherent misconduct in Finegan's actions as set forth in the appeal.[4] Rather, the appeal concerns the circumstances surrounding Plaintiff's injury and resulting lack of proper medical treatment. Although in the relief portion of appeal 12-01844 Plaintiff requested, among other things, that all correctional officers who acted indifferently to him be dismissed form their current positions, Plaintiff did not provide facts providing notice of Defendants Neighbors and Finegan's misconduct in forcing Plaintiff to use the stairs from April 6, 2012 to April 17, 2012, or that Defendant Kauffman failed to provide assistance and taunted Plaintiff while he was in excruciating pain as set forth in the operative complaint in this action. See Sapp, 623 F.3d at 824; Akhtar v. Mesa, 698 F.3d 1202, 1211 (9th Cir. 2012); McCollum v. Cal. Dept. of Corr. and Rehabilitation, 647 F.3d 870, 876 (9th Cir. 2011) (finding Wiccan prisoner's grievance alleging religious discrimination in the form of unequal access to worship places and sacred items insufficient to put prison officials on notice of Plaintiff's separate legal challenge to the prison's failure to establish a paid Wiccan chaplaincy). Accordingly, Plaintiff did not grieve the claim against Defendants Neighbors and Finegan for deliberate indifference from April 6, 2012 to April 17, 2012 or the claim against Defendant Kauffman.

However, the allegations in Appeal Log No. KVSP-O-12-01844 that after Plaintiff injured his back and was laid out on the floor, he was ordered by Neighbors to get up and up prior to escort to the outside medical facility, are sufficient to place prison officials on notice that Neighbors was deliberately indifferent to his serious medical needs. With regard to the treatment at Delano Regional Medical Center by Dr. Barnes, Appeal Log No. KVSP-O-12-01844, alleges that Plaintiff injured his back on April 6, 2012, and he was unable to move. After Plaintiff was taken to Delano Regional Medical Center, x-rays were taken of his back after waiting in a room for hours. Shortly after the x-rays were taken, he was told by the doctor (Dr. Barnes) that nothing is wrong and was discharged back to KVSP. Plaintiff contends that he was later informed by another doctor that there had been an error and he has fractured vertebrae L-1 with a squished disc. (Carrasco Decl., Ex. 1.)

---

[4] Plaintiff did not provide facts providing notice of Defendant Finegan's alleged misconduct as set forth in the operative complaint in this action.

The Court rejects Defendant Barnes's interpretation of his claim as resting solely on the comment that "you guys complain about everything, even when there's nothing wrong …" as the only basis for finding a cognizable claim. Rather, the Court's June 5, 2015, screening order found that misdiagnosis and/or negligent interpretation of the x-rays, alone, was not sufficient to state a couple, but such allegations coupled with the factual statement by Barnes's were sufficient to state a plausible claim for deliberate indifference. Plaintiff's grievance is sufficient to place prison officials on notice of his claim that he was deliberately mistreated by Dr. Barnes on April 6, 2012, and the fact that Plaintiff has added additional factual allegations in the operative complaint does not negate such prior notice. See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) ("A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact to prove each element of an eventual legal claim. The primary purpose of a grievance is to alter the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.")

Having found the grievance sufficient as to the first claim against Defendant Neighbors and the claim against Defendant Dr. Barnes, the issue now becomes whether this appeal was fully exhausted when it was screened at the first level of review on June 15, 2012, and forwarded to the medical department for processing, to which Plaintiff contends he never received a response. (Opp'n at 6, 10.)

The Ninth Circuit has held that a court may excuse a prisoner from complying with the exhaustion requirement when prison officials render administrative remedies effectively unavailable even if prison officials did not act in bad faith in doing so. See Sapp, 623 F.3d at 822; Nunez, 591 F.3d at 1224. In this case, Plaintiff contends that after appeal KVSP-0-12-01844 was forwarded to medical on June 15, 2012, he never received a response thereafter. After he received no response, Plaintiff submitted appeal KVSP-O-12-02656 on July 5, 2012, which was ultimately screened out as duplicative of appeal KVSP-O-12-01844 on August 21, 2012. (Tallerico Decl. Ex. 2.) Defendants do not address and it is undisputed that Appeal Log No. KVSP-0-12-01844 was forwarded for review on June 15, 2012, and Plaintiff claims that he never received a response thereafter.

///

///

14

Because the screen-out of Appeal KVSP-O-12-01844, did not provide specific reasons as to what claim(s) were or were not being considered as staff complaints and/or medical issues, the Court cannot find that Plaintiff failed to properly exhaust for failure to appeal the screen-out decision. Furthermore, Plaintiff argues, and Defendants do not refute, that he never received a response after the appeal was forwarded and processed as a medical grievance. Such circumstance lends further support to the fact that it would be unknown to Plaintiff as to what claim(s) to challenge by way of appealing the screening decision. In forwarding Plaintiff's appeal to medical department, it was not clear that prison officials were not addressing Plaintiff's nonmedical claims. Due to the prison officials' failure to either deny the claim or clearly state what other action was being taken, Plaintiff reasonably assumed at that point that the administrative remedies were being exhausted. Without a response to Appeal KVSP-O12-01844, the Court cannot make a determination whether it was properly screened, and Defendants have not met their ultimate burden of proof that Plaintiff failed to exhaust the administrative remedies as to his claim against Defendant Neighbors for deliberate indifference by ordering Plaintiff to cuff up and walk to the outside facility and against Defendant Dr. Barnes for deliberate indifference during his visit on April 6, 2012. Albino, 747 F.3d at 1172.

2. Other Grievances Submitted in Plaintiff's Opposition

In opposition, Plaintiff contends that he filed thirteen appeals while at KVSP that were rejected/cancelled and/or never processed or returned to Plaintiff. (Opp'n at 12.) Plaintiff presents numerous exhibits, including several administrative appeals that are irrelevant to whether he failed to exhaust the administrative remedies concerning the claims in this action. Several of the appeals are health care appeal assigned "HC" to their log numbers. However, none of these appeals served to exhaust the claims against Defendants Neighbors, Kauffman, Finegan and Dr. Barnes. Plaintiff references and submits health-care appeals KVSP-HC-12033210 (alleging negligent medical care), KVSP-HC-12033403 (alleging negligent medical care), KVSP-HC-12033536 (alleging inadequate medication and medical devices), KVSP-HC-1203301 (alleging inadequate pain medication), KVSP-O-12-03214-converted to a grievance logged as KVSP-HC-12033638 (seeking a cane and a "medically impaired" vest), COR-HC-13054159 (alleging abusive treatment during hunger strike), COR-HC-13054409 (alleging retaliation and harassment), and COR-HC-13054643 (alleging denial of

1  nourishment), COR-HC-13054159 (denial of nourishment), COR-HC-13054409 (denial of
2  nourishment).  (See Opp'n, Exs. 3-4, 7-8, 10.)
3    Plaintiff also references several nonhealth-care appeals that do not relate to Plaintiff's claims in
4  this action.  For instance, Plaintiff references and submits appeals KVSP-O-12-4066 (alleging property
5  confiscated), CSPC-7-13-04017 (alleging missing funds), CSPC-13-06030 (seeking restoration of
6  privileges), CSPC-13-6929 (concerning gang validation), CSPC-13-6647 (seeking expunction of rules
7  violation reports), CSPC-6-14-00238 (gang validation).  (See Opp'n Exs 9-10, 12.)
8    Tallerico, Appeals Coordinator at KVSP, Pacillas, Appeals Coordinator at CSP-Corcoran, and
9  Voong, Chief of the Office of Appeals, declare that Plaintiff did not obtain a third-level review
10 decision for any of the above appeals.  But even if Plaintiff had obtained a third-level review decision
11 for each of them, none of the appeals satisfy the exhaustion requirement for the claims present in the
12 instant action.  The fact that appeals were screened and cancelled or rejected does not serve to exhaust
13 the administrative remedies.  A cancellation decision may be challenged, § 3084.6(e), and in the
14 cancellation letters provided to Plaintiff, it specifically informed in writing as follows: "Pursuant to
15 CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a
16 separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted
17 if the appeal on the cancellation is granted."  (Opp'n, Ex. 5, 6, 8, 9, 10.)  Moreover, in the health-care
18 rejection letters, it was specifically stated, "[t]his screening action may not be appealed unless you
19 allege that the above reason(s) is inaccurate.  In such case, return this form and your appeal to the
20 Health Care Appeals Office with the necessary information."  (Opp'n, Ex. 3, 4, 7, 8, 10.)  Although a
21 grievance need not include legal terminology or legal theories unless they are in some way needed to
22 provide notice of the harm being grieved or contain every fact necessary to prove each element of an
23 eventual legal claim, it must alert prison officials to the factual basis for which his claim is based.  In
24 sum, these grievances did not exhaust against Defendants Neighbors and Finegan for forcing Plaintiff
25 to walk from his cell using the stairs to show and receive food for eleven days (from April 6, 2012 to
26 April 17, 2012) or Plaintiff's claim against Defendant Kauffman for deliberate indifference by
27 requiring Plaintiff to walk to the stairs and shower and failure to provide assistance, and these claims
28 should be dismissed.

16

# IV.

# RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be GRANTED in part and DENIED in part as follows:

    a. Plaintiff's claim against Defendants Dr. Barnes for deliberate indifference to a serious medical need is exhausted;

    b. Plaintiff's claim against Defendant Neighbors for deliberate indifference to a serious medical need by ordering Plaintiff to get up and walk to the clinic after he serious injured his back is exhausted;

    c. Plaintiff's claim against Defendants Neighbors and Finegan for forcing Plaintiff to walk from his cell using the stairs to show and receive food for eleven days (from April 6, 2012 to April 17, 2012) is not exhausted and should be dismissed; and

    d. Plaintiff's claim against Defendant Kauffman for deliberate indifference by requiring Plaintiff to walk to the stairs and shower and failure to provide assistance is not exhausted and should be dismissed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time

///
///
///
///
///
///

may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 22, 2016**

UNITED STATES MAGISTRATE JUDGE