# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN JAIMES,<br><br>   Plaintiff,<br><br> v.<br><br>DR. ROBERT J. BARNES, et al.,<br><br>   Defendants. | Case No.: 1:14-cv-00952-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT BARNES' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>[ECF No. 72] |

  Plaintiff Juan Jaimes is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

  Currently before the Court is Defendant Dr. Barnes' motion for summary judgment, filed October 14, 2016.

## I.

## RELEVANT HISTORY

  This action is proceeding against Defendants Dr. Barnes and Neighbors for deliberate indifference to a serious medical need.[1]

  Defendant Neighbors filed an answer to the complaint on September 15, 2015, and Defendant Barnes filed an answer to the complaint on September 21, 2015.

---

[1] Defendant Dr. Barnes is represented by Thomas Bradford, Esq, and Defendant Neighbors is represented by Deputy Attorney General, David Carrasco.

1

On August 2, 2016, Defendants' exhaustion-related motions for summary judgment were granted in part and denied in part, and the action was determined to proceed against Defendants Dr. Barnes and Neighbors for deliberate indifference to a serious medical need.[2]

As previously stated, on October 14, 2016, Defendant Dr. Barnes filed a motion for summary judgment. Although Plaintiff requested and received two extensions of time to file an opposition, no opposition was filed and the time to do so has expired.[3] Accordingly, Dr. Barnes' motion for summary judgment is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## SUMMARY JUDGMENT LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v.

---

[2] Defendants Kauffman and Finegan were dismissed from the action, without prejudice, for failure to exhaust the administrative remedies.

[3] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." In re Oracle Corp., 627 F.3d at 387 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at this recommendation, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III.

### DISCUSSION

#### A. Summary of Plaintiff's Complaint

On April 6, 2012, while at KVSP Facility B-yard, between 2:00 and 2:30 p.m., Plaintiff was playing basketball and jumping for the ball, he landed and was pinned between several other inmates. Approximately a minute later, Plaintiff felt his back crack/pop/snap causing sharp throbbing and

3

excruciating pain. Plaintiff was not able to move or stand from the waist up. Although Plaintiff summoned medical assistance, he did not receive any assistance. Plaintiff heard Defendant Neighbors and another unidentified correctional officer say, "you need to get your ass up and walk to the clinic if you want to get checked out, because I am not going to be carrying your ass, you decide." Plaintiff explained to Defendant Neighbors that he could not get up because his back snapped. Defendant Neighbors stated that he did not care because it was not his problem. Plaintiff observed two unknown inmates who witnessed the incident, and the two inmates carried and moved Plaintiff from where he was laying on his back to the clinic. While at the yard clinic, an unknown licensed vocational nurse (LVN) took Plaintiff's vitals and Plaintiff explained what happened. The LVN told Plaintiff that she was going to prepare the paperwork so that Plaintiff could be seen by a doctor at the Correctional Treatment Center (CTC) located within the facility. Shortly thereafter, Defendant Neighbors and an unknown officer went to Plaintiff's location and informed Plaintiff that he would have to be placed in shackles in order to transport him to CTC. Plaintiff stated that he could not get up or move at all. Defendant Neighbors again stated that Plaintiff would not be going anywhere until he was shackled, and Plaintiff was forced into shackles by Defendant Neighbors and an unknown officer.

Plaintiff arrived at CTC by ambulance between 3:30 and 4:00 p.m. Upon arrival, Plaintiff was placed in an observation room and approximately twenty minutes later his vital signs were taken. Plaintiff informed the nurse that he could not move any part of his upper body and was experiencing excruciating pain.

Between approximately 7:30 and 8:00 p.m., Defendant J. Barnes examined Plaintiff. Plaintiff explained that he injured his back and could not move due to the excruciating pain. Defendant Barnes told Plaintiff he looked fine. Shortly thereafter Plaintiff was taken to the x-ray room, and during the transport Defendant Barnes stated, "you guy[s] complain about everything, even when there [is] nothing wrong, you guys get better treatment then the people out here." After the x-rays, Plaintiff was taken back to the observation room where he stood for hours at a table. Defendant Barnes returned to the room and told Plaintiff he was fine that it was just muscle back spasms. Plaintiff was discharged back to custody officer Defendant Neighbors without further treatment.

Plaintiff requested that Defendant Neighbors get supervisor approval to cuff Plaintiff in front due to the pain in his back but his request was not accommodated. Plaintiff was escorted and placed in his cell where he laid on his back for five days, and he was forced to get from his bed and walk the stairs to shower and receive food. During the shower, there was no chair or bench to assist Plaintiff. Plaintiff had to endure this treatment from April 6, 2012, through April 17, 2012.

**B.    Defendant's Statement of Undisputed Facts[4]**

1.    On April 6, 2012, Plaintiff was playing basketball at Kern Valley State Prison (KVSP) when he fell and other inmates landed on top of him. (Dep. of Juan Jaimes ("Pl. Dep.") at 9:5-9, 9:14-19; Levin Decl. at ¶ 6(a).)

2.    Plaintiff sustained injuries to his back from the accident. (Pl. Dep. at 9:6-8; Levin Decl. at ¶ 6(a).)

3.    At the yard clinic, an unknown nurse came to take Plaintiff's vitals. (Pl. Dep. at 16:6-12.)

4.    Thereafter, Plaintiff was taken to the Correctional Treatment Center (CTC) located within KVSP for his injuries. (Pl. Dep. at 16:17-20, 17:5-12; Levin Decl. at ¶6(a).)

5.    At the CTC Plaintiff was given an injection of 60 mg of Toradol, which is a nonsteroidal anti-inflammatory drug which is used for short-term management of moderate to moderately severe pain. (Pl. Dep. at 33:25-34:4; Levin Decl. at ¶ 6(a).)

6.    Plaintiff was then transported to Delano Regional Medical Center for further evaluation and treatment. (Levin Decl. at ¶ 6(a); Pl. Dep. at 37:21-38:2.)

---

[4] Plaintiff neither admitted or denied the facts set forth by defendant as undisputed nor filed a separate statement of disputed facts. Local Rule 260(b). Therefore, the Court was left to compile the summary of undisputed facts from Defendant's statement of undisputed facts and Plaintiff's verified complaint. A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e). Because plaintiff neither submitted his own statement of disputed facts nor addressed defendants' statement of undisputed facts, the Court accepts Defendant's version of the undisputed facts where Plaintiff's verified complaint is not contradictory. The court notes for the record that Plaintiff was provided with the requirements for opposing a motion for summary judgment by Defendant in a notice filed on October 14, 2016. (ECF No. 71.) Therefore, the requirements of Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988) have been satisfied.

7. Plaintiff arrived at Delano at 5:49 p.m. and was taken to an examination room. (Plaintiff's Medical Records from Delano Medical Records ("Pl. Med. R.") at pgs. 14, 16; Levin Decl. ¶ 6(b).)

8. Triage of Plaintiff was completed by 5:59 p.m. where Plaintiff's chief complaint was pain. (Pl. Med. R. at pgs. 12, 16; Levin Decl. ¶ 6(b).)

9. Plaintiff was examined by Dr. Barnes in the Emergency Department at 6:31 p.m. (Pl. Med. R. at p. 12; Levin Decl. at ¶ 6(c).)

10. Dr. Barnes noted Plaintiff had moderate pain with an exacerbation of pain during movement. (Pl. Med. R. at p. 12; Levin Decl. at ¶ 6(c).)

11. Dr. Barnes noted immobilization to be a relieving factor. He further noted Plaintiff to be alert, oriented, and in mild distress. Dr. Barnes' physical exam of Plaintiff showed no abnormalities other than the pain noted by Plaintiff. (Pl. Med. R. at pgs. 12-13; Levin Decl. at ¶ 6(c).)

12. Dr. Barnes ordered an x-ray of Plaintiff's spine. Dr. Barnes also ordered 350 mg of Soma, 1 tablet, to be taken orally. Soma is a muscle relaxer used to treat muscle pain. Dr. Barnes further 100 mg of tramadol, 2 tables, taken orally. Tramadol is an opioid analgesic used to treat moderate to moderately severe pain. (Levin Decl. at ¶ 6(d).)

13. After submitting the orders for the x-ray and medication, Dr. Barnes transitioned the care of Plaintiff to Conrad Heinstein, M.D. at 7:00 p.m. (Pl. Med. R. at p.14; Levin Decl. at ¶ 6(e).)

14. Dr. Barnes had no further involvement in the treatment of Plaintiff. (Pl. Med. R. at p. 14; Levin Decl. at ¶ 6(e).)

15. Plaintiff did not see Dr. Barnes after this visit. (Pl. Dep. at 108:15-18, 111:13-17.)

16. The x-ray of Plaintiff's spine was completed at 7:01 p.m. on April 6, 2012 after Dr. Barnes had transitioned out of Plaintiff's care. (Levin Decl. ¶ 6(f); Pl. Med. R. at p. 21.)

17. The radiologist, Donald E. Cornforth, M.D., noted that the x-ray showed a slight anterior/superior wedging of L1, which was suspected to be an old injury. (Levin Decl. ¶ 6(f).)

18. The conclusion by Dr. Cornforth was "very slight anterior/superior wedging of L1, which is probably old. Otherwise normal lumbosacral spine series." (Levin Decl. ¶ 6(f); Pl. Med. R. at p. 11.)

19. Plaintiff had no knowledge whether Dr. Barnes ever saw the results for his x-ray. (Pl. Dep. at 111:6-9.)

20. A note at 8:02 p.m. by Physicians Assistant Frieda Gear, P.A. noted that the x-ray showed a compression fracture at T12-L1. Ms. Gear also noted that Plaintiff would need a wheelchair for a couple of weeks and to apply ice to his back. She further noted that Plaintiff was stable with no problems with leg movement or sensitivity. (Levin Decl. ¶ 6(g).)

21. Dr. Barnes had already transitioned out of Plaintiff's care by the time of Ms. Gear's note. (Levin Decl. ¶ 6(g); Pl. Med. R. at p. 14.)

22. Plaintiff was discharged at approximately 8:22 p.m. with a prescription for naproxen, a nonsteroidal anti-inflammatory drug. (Levin Decl. ¶ 6(h).)

23. Dr. Barnes had already transitioned out of Plaintiff's care by the time of Plaintiff's discharge from Delano. (Levin Decl. ¶ 6(h)); Pl. Med. R. at p. 14.)

24. John Levin, M.D. ("Dr. Levin") received a Bachelor of Science degree in 1971 from the University of California at Los Angeles. (Levin Decl. at ¶ 1.)

25. Dr. Levin received a medical degree in 1977 from the University of California at Irvine. (Levin Decl. at ¶ 1.)

26. Dr. Levin completed a rotating internship in 1978 at the University of Southern California with a major and minor in Trauma-Pediatric Emergency, Ob-Gyn Emergency, and Critical Care Unit/Intensive Care Unit. (Levin Decl. at ¶ 1.)

27. Dr. Levin is board certified in Emergency Medicine. (Levin Decl. at ¶ 2.)

28. Dr. Levin currently practices emergency medicine at Glendale Memorial Hospital, Arcadia Methodist Hospital, and Whittier Hospital. (Levin Decl. at ¶ 2.)

29. Based on his medical experience, training, knowledge, and education, Dr. Levin is qualified and competent to give expert testimony on the facts of this case. (Levin Decl. at ¶ 2.)

30. Dr. Levin reviewed Plaintiff Juan Jaimes' medical records from Delano Regional Medical Center and the deposition transcript of Plaintiff Juan Jaimes. (Levin Decl. at ¶ 3.)

31. Dr. Levin is and has been, familiar with the standard of care in the California medical community for physicians practicing emergency medicine. (Levin Decl. at ¶ 4.)

### C. Findings on Defendant's Motion

Defendant argues he complied with the applicable standard of care for treating physicians practicing in the same community under similar circumstances, and no alleged act or omission on Defendant's part caused or contributed to any injury Plaintiff alleges to have suffered.

For Eighth Amendment claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

An Eighth Amendment claim may not be premised on even gross negligence by a physician. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Further, "[a] difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

The events that took place during Plaintiff's initial emergency visit at Delano Regional Medical Center on April 6, 2012 and evaluation by Dr. Barnes fail to demonstrate a triable issue of material fact that Dr. Barnes acted with deliberate indifference. On April 6, 2012, Dr. Barnes evaluated Plaintiff after he was admitted with injuries to his back from a fall while playing basketball.

Plaintiff arrived at Delano Regional Medical Center at 5:49 p.m. and was taken to the examination room. (Pl. Med. R. at pgs. 14, 16; Levin Decl. at ¶ 6(b).) The triage was completed by a nurse at 5:59 p.m. and Plaintiff's chief complaint was pain. (Pl. Med. R. at pgs. 12, 16; Levin Decl. at ¶ 6(b).) Plaintiff was then examined by Dr. Barnes in the emergency department at 6:31 p.m. Dr. Barnes noted Plaintiff had moderate pain with an exacerbation of pain during movement. (Pl. Med. R. at p. 12; Levin Decl. at ¶ 6(c).) He noted immobilization to be a relieving factor. (Id.) He further noted that Plaintiff to be alert, oriented, and in mild distress. (Pl. Med. R. at p. 13; Levin Decl. at ¶ 6(c).) Dr. Barnes' physical exam of Plaintiff showed no abnormalities other than the pain noted by Plaintiff. (Pl. Med. R. at pgs. 12-13; Levin Decl. at ¶ 6(c).) Dr. Barnes ordered an x-ray of Plaintiff's spine. (Levin Decl. ¶ 6(d).) Dr. Barnes also ordered 350 mg of Soma, 1 tablet, to be taken orally. (Id.) Soma is a muscle relaxer used to treat muscle pain. (Id.) Dr. Barnes also ordered 100 mg of tramadol, 2 tables taken orally. (Id.) Tramadol is an opioid analgesic used to treat moderate to moderately severe pain. (Id.)

After Dr. Barnes submitted the orders for the x-ray and medication, Dr. Barnes transitioned the care of Plaintiff to Conrad Heinstein, M.D. at 7:00 p.m. (Pl. Med. R. at p. 14; Levin Decl. at ¶ 6(e).) Dr. Barnes had no further involvement in the treatment of Plaintiff, and Plaintiff did not see Dr. Barnes after this visit. (Id.; Pl. Dep. at 108:15-18, 111:13-17.) Indeed, Plaintiff admits that he only saw Dr. Barnes during the initial visit. (Pl. Dep. at 108:15-18, 111:13-17.)

The x-ray of Plaintiff's spine was completed at 7:01 p.m. on April 6, 2012, which again was after Dr. Barnes had transitioned out of Plaintiff's care. (Levin Decl. ¶ 6(f); Pl. Med. R. at p. 21.) The radiologist, Donald E. Cornforth, M.D., noted that the x-ray showed a slight anterior/superior wedging of L1, which was suspected to be an old injury. (Levin Decl. ¶ 6(f); Pl. Med. R. at p. 11.) Dr. Cornforth concluded "very slight anterior/superior wedging of L1, which is probably old. Otherwise normal lumbosacral spine series." (Id.) Plaintiff acknowledged that he had no knowledge whether Dr. Barnes ever saw the results of his x-ray. (Pl. Dep. at 111:6-9.)

Physicians Assistance Frieda Gear, made a note at 8:02 p.m. which indicated that the x-ray showed a compression fracture at T12-L1. (Levin Decl. ¶ 6(g).) It was further noted that Plaintiff would need a wheelchair to be stable with no problems with leg movement or sensitivity. (Id.) Again,

9

at the time of Ms. Gear's notations, Dr. Barnes had transitioned out of Plaintiff's care. (Levin Decl. ¶ 6(g); Pl. Med. R. at p. 14.)

Plaintiff was discharged on April 6, 2012, at approximately 8:22 p.m. with a prescription for naproxen, a nonsteroidal anti-inflammatory drug, which was well after Dr. Barnes had transitioned out of Plaintiff's care. (Levin Decl. ¶ 6(h); Pl. Med. R. at pgs. 14, 19.)

Only a defendant who "purposefully ignore[s] or fail[s] to respond to a prisoner's pain or possible medical need" can be found to be deliberately indifferent. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Here, Defendant Dr. Barnes did not ignore or fail to respond to Plaintiff's complaints of back pain. Rather, Dr. Barnes examined Plaintiff and ordered an x-ray of Plaintiff's spine, along with 350 mg of Soma and 100 mg of tramadol to treat Plaintiff's pain. After Dr. Barnes initial examination and orders, he then transitioned the care of Plaintiff to Donald E. Cornforth, M.D., and unquestionably had not further involvement in Plaintiff's care.

Furthermore, Defendant submits the declaration of Dr. Levin's expert opinion which demonstrates that Dr. Barnes' diagnosis, care, and treatment of Plaintiff was within the applicable standard of care of emergency medicine physicians. Dr. Levin received a Bachelor of Science degree in 1971 from the University of California at Los Angeles. (Levin Decl. at ¶ 1.) Dr. Levin received a medical degree in 1977 from the University of California at Irvine. (Levin Decl. at ¶ 1.) Dr. Levin completed a rotating internship in 1978 at the University of Southern California with a major and minor in Trauma-Pediatric Emergency, Ob-Gyn Emergency, and Critical Care Unit/Intensive Care Unit. (Levin Decl. at ¶ 1.) Dr. Levin is board certified in Emergency Medicine. (Levin Decl. at ¶ 2.) Dr. Levin currently practices emergency medicine at Glendale Memorial Hospital, Arcadia Methodist Hospital, and Whittier Hospital. (Levin Decl. at ¶ 2.) Based on his medical experience, training, knowledge, and education, Dr. Levin is qualified and competent to give expert testimony on the facts of this case. (Levin Decl. at ¶ 2.) Dr. Levin reviewed Plaintiff Juan Jaimes' medical records from Delano Regional Medical Center and the deposition transcript of Plaintiff Juan Jaimes. (Levin Decl. at ¶ 3.) Dr. Levin is and has been, familiar with the standard of care in the California medical community for physicians practicing emergency medicine. (Levin Decl. at ¶ 4.)

It is Dr. Levin's opinion to a reasonable degree of medical probability that the care and treatment provided by Dr. Barnes was within the standard of care in emergency medicine in the year 2012 and presently. (Levin Decl. at ¶¶ 5, 7.) Dr. Levin based his expert opinion on the following:

(a) Dr. Barnes properly examined, evaluated, and treated Plaintiff while he was in the Emergency Department of Delano Regional Medical Center on April 6, 2012.

(b) Dr. Barnes ordered the appropriate diagnostic tests and properly ordered medication for Plaintiff Juan Jaimes. Dr. Barnes appropriately ordered a muscle relaxer and pain relief medication to address Plaintiff's symptoms. Dr. Barnes appropriately ordered an x-ray of Plaintiff's spine as a diagnostic tool.

(c) Plaintiff's care was transitioned to another physician at 7:00 p.m. on the evening of April 6, 2012. Dr. Barnes was no longer involved in or responsible for Plaintiff's care after 7:00 p.m. on April 6, 2012. It is common, customary, and appropriate for an emergency physician to transfer care of a patient to another physical due to a shift change or other reasons. The results of the x-ray were not available during the time Plaintiff was in the care of Dr. Barnes, and the discharge and discharge orders were not given by Dr. Barnes.

(Levin Decl. at ¶ 7(a)-(c).)

Dr. Levin's expert opinion based on his education, training, experience, and review of Plaintiff's medical records and Plaintiff's deposition testimony supports the finding that Dr. Barnes did not act with deliberate indifference toward Plaintiff's serious medical needs.

In his complaint Plaintiff contends that Dr. Barnes stated "[y]ou guy (sic) complain about everything, even when there's nothing wrong" and [y]ou guys get better treatment then the people out here." (Pl.'s First Amd. Compl. at 10:13-15, ECF No. 21.) Plaintiff also alleged that upon examination, Dr. Barnes told him he "looks fine." (Id. at 10:11.) These alleged comments are irrelevant and fail to raise a genuine issue of material fact. In order to demonstrate that Dr. Barnes had a culpable state of mind regarding the medical care provided to Plaintiff, the requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Notwithstanding the alleged comments, Plaintiff simply has not and cannot demonstrate the necessary state of mind on the part off Dr. Barnes in treating Plaintiff's medical needs. It is undisputed, as explained above, that Dr. Barnes ordered the appropriate diagnostic tests and medication. Therefore, because Dr. Barnes provided

reasonable and appropriate treatment, Dr. Barnes' state of mind in making the alleged statements is irrelevant and fails to establish a genuine issue of material fact. Dr. Barnes actions in ordering an x-ray and prescribing appropriate pain medication militate against a finding he purposefully ignored, delayed, or failed to respond to Plaintiff's medical needs. Furthermore, Plaintiff has simply failed to present any evidence that the treatment provided by Dr. Barnes was inadequate or rose to the level of deliberate indifference. Accordingly, having examined the evidence in the light most favorable to Plaintiff, the undisputed evidence demonstrates that Defendant Dr. Barnes was not deliberately indifferent to Plaintiff's serious medical needs. Thus, Dr. Barnes is entitled to summary judgment.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant Dr. Barnes's motion for summary judgment be granted; and
2. The Clerk of Court be directed to enter judgment in favor of Dr. Barnes.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 19, 2017**

UNITED STATES MAGISTRATE JUDGE